IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| WALTER LEE WRIGHT, | * | |
| Plaintiff | * | |
| v. | * | Civil Action No. DKC-24-1966 |
| OFFICER KYLE BAXTER, SGT. BRETT TRAHAN, OFFICER MICHAEL NELSON, OFFICER JONATHAN JOHNSON, OFFICER MATTHEW WOOD, | * * * | |
| Defendants | * | |

***

# MEMORANDUM OPINION

Defendants Officer Kyle Baxter, Sgt. Brett Trahan, Officer Michael Nelson, Officer Jonathan Johnson, and Officer Matthew Wood, who are Montgomery County Police Officers, have filed a Motion to Dismiss in response to Plaintiff Walter Lee Wright's amended complaint (ECF No. 4) alleging excessive use of force during his arrest. ECF No. 15. Plaintiff, who proceeds pro se, opposes the motion. ECF No. 21. For the reasons stated herein, Defendants' Motion shall be granted in part and denied in part.

Plaintiff also filed a Motion for Leave to Amend the Complaint to add as a Defendant Police Chief Thomas Manger. ECF No. 13. After Defendants opposed the motion on the basis that Chief Manger was retired at the time of Plaintiff's arrest and because Plaintiff failed to state a claim against Chief Manger, Plaintiff withdrew his first Motion for Leave to Amend and filed a second motion seeking to add as a Defendant Captain James Reed. The second motion was not signed. ECF No. 18. After the Clerk notified Plaintiff of the deficiency in his Motion for Leave to Amend (ECF No. 19), he filed a corrected version of the motion. ECF No. 23. Plaintiff also filed a Motion to Substitute Party which seeks to substitute Chief Marcus G. Jones for Chief

Manger. ECF No. 26. Because Plaintiff fails to state a claim against Captain Reed and Chief Jones, as explained more fully below, his Motion for leave to amend and to substitute shall be denied. No hearing is required. *See* L. R. 105.6 (D. Md. 2023).

## BACKGROUND

### A. Complaint Allegations

Plaintiff alleges that during an investigative stop for a suspected burglary, Officer Baxter held a weapon to Plaintiff's temple[1] and forced his knee into Plaintiff's left thigh while screaming "don't move or I will blow your brains out." ECF No. 4 at 8. Officer Baxter then began kicking Plaintiff violently causing him to scream out in pain and to tell Officer Baxter that he was hurting him. *Id*. Officer Baxter then ordered Plaintiff to turn over on his stomach and the violent kicking and screaming continued as Officer Baxter held a weapon to Plaintiff's temple. *Id*. Officers Aniyah Miller and Defendant Sgt. Trahan arrived and assisted Officer Baxter. *Id*. at 9.

Plaintiff was removed from school property[2] and when Officer Baxter asked him if he wanted to go to the hospital, Plaintiff confirmed that he did. ECF No. 4 at 9. After he arrived at the hospital, it was determined that Plaintiff had suffered a closed fracture of the distal end of the left fibula from a blunt object assault. *Id*. Plaintiff hypothesizes that the blunt object causing the injury to his ankle "may have been sheet toe shoes." *Id*. Plaintiff claims that, although he was prescribed oxycodone, he was never given any of that medication. *Id*. at 10. He states that his exchange with Officer Baxter took place in front of Officers Nelson and Miller and possibly Sgt. Trahan. *Id*.

---

[1] Plaintiff uses the word "temper," but taking the word in context, Plaintiff appears to mean temple. ECF No. 4 at 8.

[2] Plaintiff does not explain what school he is referencing in his amended complaint.

2

Plaintiff distinguishes between Defendants Officer Baxter and Sgt. Trahan because he insists that he never had any contact with Sgt. Trahan other than when Sgt. Trahan arrived to assist Officer Baxter with handcuffing him when he was arrested. ECF No. 4 at 10. He states that there was never a verbal exchange between himself and Sgt. Trahan and claims that there was an elaborate cover-up in effect among "these defendants that does not end with falsified bodycam video footage of an arrest by defendant Trahan, falsified reports, supplemental reports, statement of charges, all written to support and collaborate [sic] defendant Trahan as Plaintiff's arrester and not defendant Baxter." *Id*. Plaintiff explains that his public defender showed him bodycam video of his arrest which depicts his arrest as being made by Defendant Sgt. Trahan and he "immediately protested" when he saw that video footage. *Id*. at 8. He states that if the arrest was recorded by Officer Baxter, his "body was in to[o] close a proximity to Plaintiff's body to produce footage with his weapon at Plaintiff's temper [sic] and knee on Plaintiff's left thigh while screaming 'don't move or I'd [sic] blow your brains out.'" *Id*.

Plaintiff adds that Officer Aniyah Miller "arguably" did not file a false report and "is a potential witness." ECF No. 4 at 10. He asks the court to review "exhibits of reports, supplemental reports, original statement of charges written by Defendant Baxter" but does not attach such reports to the Amended Complaint. *Id*. Plaintiff also does not explain what the court is meant to glean from these reports that he denigrates as falsified but nevertheless invites the court to review. *Id*.

Plaintiff alleges that Officer Baxter's actions amounted to the unconstitutional excessive use of force during an investigative stop on an unarmed, non-dangerous arrestee who was not resisting or threatening harm. ECF No. 4 at 11. Plaintiff asserts that this amounted to a violation of the Fourth Amendment to the United States Constitution. *Id*.

Plaintiff asserts that Defendant Sgt. Trahan colluded with Officer Baxter to violate his civil rights to be free from physical abuse by engaging in a cover-up of Officer Baxter's actions by falsifying bodycam video footage of the initial arrest scene, and falsifying reports.  ECF No. 4 at 11- 12.  This alleged cover up also involved Defendants Officer Nelson, Officer Johnson, and Officer Wood presumably because they filed reports that did not document an assault by Officer Baxter and somehow engaged in actions that altered body camera video of Plaintiff's arrest.  *Id*.  In Plaintiff's view, Sgt. Trahan's actions amount to a "prima facie civil conspiracy claim in violation of the 14th Amendment U.S. Const., and 42 USC § 1985." *Id*. at 12.  As relief, Plaintiff seeks monetary damages against all Defendants in both their individual and official capacities.  ECF No. 4 at 12.

On July 18, 2024, the court received correspondence from Plaintiff which included a partial copy of the Statement of Probable Cause prepared by Officer Baxter.  ECF No. 7 at 4-5.  The report states in pertinent part that Officer Baxter responded to a call of a break-in at a residence in Chevy Chase, Maryland on February 1, 2024.  *Id*. at 4.  Officer Baxter was first on the scene and, as he entered the driveway of the residence, he saw an unknown male exiting the fenced-in backyard through a gate.  *Id*. at 4-5.  When that person saw Officer Baxter, he turned and ran, dropping a black bag he had been carrying.  *Id*. at 5.  The fleeing subject then climbed a six-foot fence into a neighboring yard and "fell hard to the ground." *Id*.  Despite the fall, he was able to get up and continue to run across the street and was ultimately located by Sgt. Trahan, attempting to hide in a small, wooded area.  *Id*.  Sgt. Trahan took Plaintiff into custody and was able to identify him by his Maryland Division of Corrections identification card.  *Id*.  Plaintiff does not include an explanation with this report outlining what he believes to be false beyond his initial claim that Officer Baxter was the officer who apprehended him, not Sgt. Trahan.

4

B.     **Plaintiff's Motion for Leave to Amend and to Substitute Party**

In his Motion for leave to Amend the Complaint, Plaintiff seeks to add as a Defendant Captain James Reed.  Plaintiff explains that Capt. Reed is a supervisor who has the affirmative duty to intervene to protect the constitutional rights of citizens.  *Id*. at 3.  He claims that Capt. Reed violated his Fourth and Fourteenth Amendment rights to due process and equal protection by approving falsified arrest reports; falsifying Officer Baxter and Sgt. Trahan's bodycam footage; and falsifying original applications for statements of charges by disclaiming Plaintiff's injury inflicted by Officer Baxter.  *Id*.  Plaintiff states that if he is granted leave to amend, he will show that Capt. Reed had actual or constructive knowledge that his subordinates engaged in conduct that amounted to an unreasonable risk of constitutional injury to Plaintiff; that his response was so inadequate that it amounted to deliberate indifference or tacit authorization of the offensive practice; and there was an affirmative causal link between Capt. Reed's inaction and the injury suffered by Plaintiff.  *Id*. at 4.

Similarly, in Plaintiff's Motion to Substitute Party he seeks to substitute Chief Marcus Jones for Chief Thomas Manger and does not alter the claim asserted.  ECF No. 26-1.  He asserts that Chief Jones was employed as Chief of Montgomery County Police at all times relevant to January 31, 2024, and in his capacity as a supervisor, was responsible for hiring, training, supervising, and disciplining Defendant Officer Baxter and all the other officers.  *Id*. at 2.  Plaintiff adds that Chief Jones was responsible for implementing and enforcing county arrest and excessive force practices and procedures and ensuring compliance with those practices.  *Id*. at 7.

Pursuant to Federal Rule of Civil Procedure 15(a), "[a] party may amend its pleading once as a matter of course within 21 days after serving it, or if the pleading is one to which a responsive pleading is required, 21 days after service of a responsive pleading or 21 days after service of a

5

motion under Rule 12(b), (e), or (f), whichever is earlier." Fed. R. Civ. P. 15(a)(1). "In all other cases, a party may amend its pleading only with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a)(2). Rule 15 dictates that "[t]he court should freely give leave when justice so requires." *Id*. Where the proposed amendment to the complaint appears to be a futility, this court has the discretion to deny leave to amend. Futility is apparent if the proposed Amended Complaint fails to state a claim under the applicable rules and accompanying standards: "[A] district court may deny leave if amending the complaint would be futile—that is, if the proposed Amended Complaint fails to satisfy the requirements of the federal rules." *Katyle v. Penn Nat. Gaming, Inc*. 637 F.3d 462, 471 (4th Cir. 2011), citing *United States ex rel. Wilson v. Kellogg Brown & Root, Inc.,* 525 F.3d 370, 376 (4th Cir. 2008).

The allegations in the Motions for Leave to Amend and to Substitute Party do not state viable claims against Captain Reed and Chief Jones. Although Plaintiff references a "policy" that contributed to the alleged constitutional violation that occurred in his case, he points to no factual basis for such a conclusion. In suing a municipal government and agency under 42 U.S.C. § 1983, Plaintiff must prove two elements to succeed in such a claim. First, he must establish the existence of a constitutional violation on the part of the police officers. *See Los Angeles v. Heller*, 475 U.S. 796, 799 (1986) (jury's finding that a police officer inflicted no constitutional injury on the plaintiff removed any basis for municipal liability against city and members of police commission); *Temkin v. Frederick Cty Comm'rs*, 945 F.2d 716, 724 (4th Cir. 1991) (§ 1983 claim of inadequate training or supervision cannot be established without a finding of a constitutional violation on the part of the person being supervised); *see also Dawson v. Prince George's County*, 896 F. Supp. 537, 540 (D. Md. 1995). Second, Plaintiff must show that any constitutional violations were proximately caused by a policy, custom, or practice of the Defendants. *See Monell v. Dep't of Social Servs. of*

*N.Y.*, 436 U.S. 658, 691, 694 (1978).  Municipal policy arises from written ordinances, regulations, and statements of policy, *id.* at 690; decisions by municipal policymakers, *Pembaur v. Cincinnati*, 475 U.S. 469, 482-83 (1986); and omissions by policymakers that show a "deliberate indifference" to the rights of citizens.  *See Canton v. Harris*, 489 U.S. 378, 388 (1989).  Plaintiff's proposed allegations against Captain Reed and Chief Jones fail to satisfy these basic elements.

Further, outside of Captain Reed's and Chief Jones' status as supervisory employees, Plaintiff has not alleged either of their personal involvement in his case.  Liability under § 1983 attaches only upon personal participation by a defendant in the constitutional violation.  It is well established that the doctrine of respondeat superior does not apply in § 1983 claims.  *See Love-Lane v. Martin*, 355 F.3d 766, 782 (4th Cir. 2004) (no respondeat superior liability under § 1983).  Liability of supervisory officials "is not based on ordinary principles of respondeat superior, but rather is premised on 'a recognition that supervisory indifference or tacit authorization of subordinates' misconduct may be a causative factor in the constitutional injuries they inflict on those committed to their care.'"  *Baynard v. Malone*, 268 F.3d 228, 235 (4th Cir. 2001) (quoting *Slakan v. Porter*, 737 F.2d 368, 372 (4th Cir. 1984)).  Supervisory liability under § 1983 must be supported with evidence that:  (1) the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury to citizens like the plaintiff; (2) the supervisor's response to the knowledge was so inadequate as to show deliberate indifference to or tacit authorization of the alleged offensive practices; and (3) there was an affirmative causal link between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff.  *See Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir. 1994).  Plaintiff's claim is that on the occasion of his arrest, excessive force was used, and he suffered an injury.  He does not assert that an unconstitutional practice was utilized that ultimately

7

resulted in his injury, nor has he pointed to a specific policy of the Montgomery County Police Department that contributed to his injury. To the extent that he claims that there was a failure to intervene, no such duty arises where, as here, the proposed Defendants were not present to take action to intervene. *See Vinnedge v. Gibbs*, 550 F.2d 926, 928 (4th Cir. 1977) (stating that for an individual defendant to be held liable pursuant to 42 U.S.C. § 1983, the plaintiff must affirmatively show that the official acted personally to deprive the plaintiff of his rights). The proposed amendments are futile, and the motions shall be denied.

## STANDARD OF REVIEW

In reviewing the complaint in light of a motion to dismiss pursuant to Fed. R. Civ. Proc. 12(b)(6), the court accepts all well-pleaded allegations of the complaint as true and construes the facts and reasonable inferences derived therefrom in the light most favorable to the plaintiff. *Venkatraman v. REI Sys., Inc.*, 417 F.3d 418, 420 (4th Cir. 2005) (citing *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993)); *Ibarra v. United States,* 120 F.3d 472, 473 (4th Cir. 1997). Rule 8(a)(2) of the Federal Rules of Civil Procedure requires only a "short and plain statement of the claim showing that the pleader is entitled to relief." *Migdal v. Rowe Price-Fleming Int'l Inc.*, 248 F.3d 321, 325-26 (4th Cir. 2001); *see also Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 513 (2002) (stating that a complaint need only satisfy the "simplified pleading standard" of Rule 8(a)).

The Supreme Court of the United States explained that a "plaintiff's obligation to provide the "grounds" of his "entitlement to relief" requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations omitted). Nonetheless, the complaint does not need "detailed factual allegations" to survive a motion to dismiss. *Id.* at 555. Instead, "once a claim

has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." *Id*. at 563.  To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009) (quoting *Twombly*, 550 U.S. at 570).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.  "But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged -- but it has not 'show[n]' -- 'that the pleader is entitled to relief.'" *Id*. at 679 (quoting Fed. R. Civ. P. 8(a)(2)).  "To satisfy this standard, a plaintiff need not 'forecast' evidence sufficient to prove the elements of the claim.  However the complaint must allege sufficient facts to establish those elements." *Walters v. McMahen*, 684 F.3d 435, 439 (4th Cir. 2012) (citations omitted).

## DISCUSSION

### A. Sufficiency of Facts Alleged

Defendants move to dismiss the complaint and argue that there is no basis to conclude that excessive force was used against Plaintiff as he fails to plead the necessary facts to be weighed to determine whether the force used was reasonable.  ECF No. 15-1 at 5-6.  Factors such as the crimes with which Plaintiff was accused, whether there was an immediate threat to the safety of the officers or others, and whether Plaintiff was attempting to flee, are not mentioned in the Amended Complaint. *Id*. at 6, citing *Nichols v. Bumgarner*, Civ. Action BAH-23-14 (D. Md. 2024) at ECF No. 36 (Mem. Op.), (attached at ECF No. 15-3).  Defendants assert that the injury sustained by Plaintiff alone is insufficient to support a finding of excessive force.

Claims of excessive force during an arrest or investigatory stop are examined under the Fourth Amendment's objective reasonableness standard. *Graham v. Connor*, 490 U.S. 386, 395-

97 (1989); *see also Cty. of Los Angeles v. Mendez*, 581 U.S. 420, 427 (2017) ("*The* framework for analyzing excessive force claims is set out in *Graham*."). Reasonableness is assessed by weighing "the nature and quality of the intrusion on the individual's Fourth Amendment interests against the importance of the governmental interests alleged to justify the intrusion." *Mendez*, 581 U.S. at 427 (quoting *Tennessee v. Garner*, 471 U.S. 1, 8 (1985)). The operative question is "whether the totality of the circumstances justifies a particular sort of search or seizure." *Id*. at 427-28 (quoting *Garner*, 471 U.S. at 8-9). Factors to be included in making this determination include the severity of the crime at issue, whether there is an immediate threat to the safety of the officer or others, and whether the subject is resisting arrest or attempting to flee. *See Graham*, 490 U.S. at 396. The determination is to be made "'from the perspective of a reasonable officer on the scene' . . . 'based upon the information the officers had when the conduct occurred.'" *Mendez*, 581 U.S. at 428 (first quoting *Graham*, 490 U.S. at 397; then quoting *Saucier v. Katz*, 533 U.S. 194, 207 (2001)). The Constitution "does not require police to gamble with their lives in the face of a serious threat of harm." *Waterman v. Batton*, 393 F.3d 471, 479 (4th Cir. 2005) (quoting *Elliott v. Leavitt*, 99 F.3d 640, 641 (4th Cir. 1996)). Further, "'the right to make an arrest' 'necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it.'" *E.W. ex rel. T.W. v. Dolgos*, 884 F.3d 172, 192 (4th Cir. 2018) (quoting *Graham*, 490 U.S. at 396; *see also Martin v. Gentile*, 849 F.2d 863, 869 (4th Cir. 1988).

Defendants invite the court to review Officer Baxter's body worn camera footage from the night of the arrest, stating that the video footage is integral to the Amended Complaint as it is expressly relied upon by Plaintiff. ECF No. 15-1 at 6-7, citing *Zsigray v. Cnty. Comm'n of Lewis Cnty.*, 2017 WL 462011, *3 (N.D. W. Va. Feb. 2, 2017) quoting *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 448 (4th Cir. 2011). The video footage depicts no interaction between Officer Baxter and Plaintiff beyond an initial unsuccessful, brief chase through the backyard of the victim's house and a later identification by Officer Baxter of Plaintiff as the suspect

seen at the victim's house.  ECF No. 17.  Defendants therefore maintain that the video refutes Plaintiff's claim that excessive force was used against him by Officer Baxter and entitles them to dismissal of all claims raised.

Unlike the plaintiff in the case cited by Defendants, however, here Plaintiff questions the validity of the video recording, claims it was falsified, and claims there is an entirely different video that depicts a different aspect of his arrest.  Indeed, Plaintiff repeatedly references a different body-worn video shown to him by his public defender that has not been provided to the court.  ECF No. 4 at 8; ECF No. 24 at 8.   Plaintiff, thus, does not  incorporate Officer Baxter's body camera video footage into his Amended Complaint.  Further, it is unclear on this record whether Plaintiff has seen the body-worn video footage submitted by Defendants in support of the motion to dismiss.  The video recording presented to the court is not integral to the Amended Complaint and cannot properly be considered on a Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(6).

**B.      Official Capacity Claims**

Plaintiff includes in the listing of the Defendants that each is sued in his personal and official capacity but does not state the basis for the official capacity claims.  ECF No. 4 at 5-8.  "Official-capacity suits . . . 'generally represent only another way of pleading another action against an entity of which an officer is an agent.'"  *Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985) quoting *Monell*., 436 U.S. at 690, n. 55 (1978).  "[A]n official capacity suit is, in all respects other than name, to be treated as a suit against the entity."  *Id*. at 166.  To succeed on an official capacity claim, the "governmental entity is liable under § 1983 only when the entity itself is a 'moving force' behind the deprivation" *id*., quoting *Polk County v. Dodson*, 454 U.S. 312, 326 (1981).  A governmental entity becomes a moving force behind a deprivation through its policies or customs that are alleged to have played a role in the alleged violation of federal law.  *See Monell*,

11

436 U.S. at 694.  Here, Plaintiff has not alleged that there is a policy or custom that led to the excessive use of force against him during his arrest and caused his broken ankle.  Accordingly, the official capacity claims will be dismissed.

### C. Civil Conspiracy

Defendants also assert that the Amended Complaint fails to state a claim of conspiracy because the allegations are conclusory and do not include any specific factual allegations to support such a claim.  ECF No. 15-1 at 11-12.  To establish a civil conspiracy under § 1983, Plaintiff must present evidence that Defendants acted jointly in concert and that some overt act was done in furtherance of the conspiracy, which resulted in deprivation of a constitutional right.  *See Hinkle v. City of Clarksburg*, 81 F.3d 416, 421 (4th Cir. 1996).  A plaintiff asserting a claim of conspiracy has a "weighty burden."  *Barret v. Pae Government Services, Inc.*, 975 F.3d 416, 434 (4th Cir. 2020), quoting *Hinkle*, 81 F.3d at 421.  An essential element for a claim of conspiracy to deprive a plaintiff of a constitutional right, is an agreement to do so among the alleged co-conspirators.  *See Ballinger v. N.C. Agric. Extension Serv.*, 655 F.3d 342, 346 (4th Cir. 1987).  Without an agreement, the independent or parallel conduct of two or more wrongdoers do not amount to a conspiracy.  *See A Society Without A Name v. Virginia*, 639 F.2d 1073, 1075-76 (4th Cir. 2011).  "A conspiracy may . . . be 'inferred from the things actually done.'"  *Murdaugh Volkswagen, Inc. v. First Nat. Bank of S.C.*, 639 F.2d 1073, 1075 (4th Cir. 1981) (quoting *Overseas Motors, Inc. v. Imported Motors Ltd., Inc.*, 375 F. Supp 499, 532 (E.D. Mich. 1974)).  However, circumstantial evidence consisting of "coincidence piled on coincidence" are insufficient where the "proof of collusion is simply too attenuated" to conclude there was a conspiracy to violate the law.  *Murdaugh*, 639 F.2d at 1075.  Here, Plaintiff claims there has been a widespread conspiracy to

12

protect Officer Baxter by altering the body-worn video footage but offers no factual allegation that would raise such a claim above speculation. The conspiracy claim must therefore be dismissed.

### D. Qualified Immunity

Defendants raise a defense of qualified immunity and state that Plaintiff's Fourth Amendment claim cannot proceed against Officer Baxter because he is entitled to qualified immunity. ECF No. 15-1 at 14. They explain that it is not clearly established that an officer would violate a suspect's constitutional rights "when the documentary evidence and body worn camera footage expressly contradicts Plaintiff's claim that he was kicked or in any way even touched by Officer Baxter." *Id.* By extension, the remaining Defendants also claim qualified immunity for the same reason.

"Qualified immunity balances two important interests—the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009). "In particular, . . . qualified immunity protects law officers from 'bad guesses in gray areas' and it ensures that they may be held personally liable only 'for transgressing bright lines.'" *Gomez v. Atkins*, 296 F.3d 253, 261 (4th Cir. 2002) (quoting *Maciariello v. Sumner*, 973 F.2d 295, 298 (4th Cir. 1992)). The defense provides protection for public officials for mistakes of law, mistakes of fact, or a combination of the two. *See Groh v. Ramirez*, 540 U.S. 551, 567 (2004) (Kennedy, J., dissenting). Qualified immunity is a defense from suit, not simply liability, which is lost if a matter is improperly permitted to go to trial. *See Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985). Resolution of whether an official is entitled to qualified immunity must be determined "at the earliest possible stage in litigation." *Hunter v. Bryant*, 502 U.S. 224, 227 (1991).

In order to determine if a public official is entitled to the protections afforded by qualified immunity, two inquiries must be addressed by this court. Although the Supreme Court's decision in *Saucier v. Katz*, 533 U.S. 194 (2001) directed a rigid approach to the inquiries involved, the requirement that the two-prong analysis must be "considered in proper sequence" has since been revised. *Katz*, 533 U.S. at 200. Courts are now "permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Pearson*, 555 U.S. at 818.

The first prong is whether "[t]aken in the light most favorable to the party asserting the injury, . . . the facts alleged show [that] the officer's conduct violated a constitutional right[.]" *Saucier*, 533 U.S. at 201. If the evidence establishes a violation of a constitutional right, the second prong is to assess whether the right was "clearly established" at the time of the events at issue. *Id*. If the right was not clearly established, the qualified immunity doctrine shields a defendant officer from liability. The "answer to both *Saucier* questions must be in the affirmative in order for a plaintiff to defeat a . . . motion for summary judgment on qualified immunity grounds." *Henry v. Purnell*, 501 F.3d 374, 377-78 (4th Cir. 2007) (citing *Batten v. Gomez*, 324 F.3d 288, 293-94 (4th Cir. 2003)). "'Clearly established' means that, at the time of the officer's conduct, the law was 'sufficiently clear' that every 'reasonable official would understand that what he is doing' is unlawful. *Dist. of Columbia v. Wesby*, 583 U.S. 48, 61, 138 S. Ct. 577, 589 (2018) citing *Ashcroft v. al–Kidd*, 563 U.S. 731, 741 (2011) (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)).

Defendants' reliance on evidence outside of the pleadings when seeking dismissal of the Amended Complaint pursuant to Fed. R. Civ. P. 12(b)(6) to support their claim to qualified immunity is inappropriate. The inquiry here is whether it was clearly established at the time of Plaintiff's arrest that Officer Baxter's conduct, as alleged in the Amended Complaint, was

14

sufficiently clear such that every reasonable official would understand that what he was doing was unlawful. Plaintiff alleged that Officer Baxter kicked him, held a gun to his head, and threatened to blow his head off while kneeling on his thigh. Further, Plaintiff sustained a broken ankle during the ordeal. The qualified immunity defense which relies on a factual dispute fails on this record.

## CONCLUSION

The allegations of excessive force in violation of the Fourth Amendment raised in the Amended Complaint, read in a light favorable to Plaintiff as required when a motion to dismiss is filed, state a claim that satisfies the minimum requirements of Fed. R. Civ. P. 8(a). Plaintiff has alleged that he was thrown to the ground, a gun was held to his head, his life was threatened, and force sufficient to break his ankle was used when he was not resisting arrest. Thus, the Motion to Dismiss is denied.

A separate Order follows.

February 26, 2025                                   /s/
                                                   DEBORAH K. CHASANOW
                                                   United States District Judge