IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| WALTER LEE WRIGHT, | * | |
| Plaintiff | * | |
| v. | * | Civil Action No. DKC-24-1966 |
| OFFICER KYLE BAXTER, | * | |
| Defendant | * | |

***

**MEMORANDUM OPINION**

Defendant Officer Kyle Baxter filed a Motion for Summary Judgment, (ECF No. 67), which is opposed by self-represented Plaintiff Walter Lee Wright, (ECF No. 72). Mr. Wright also filed numerous motions related to discovery including a Motion pursuant to Fed. R. Civ. P. 56(d) for Discovery, (ECF No. 70); Motion for Voice Print, (ECF No. 71); Motion to Submit Documentary Exhibits, (ECF No. 73); Motion to Submit Belated Subpoenas, (ECF No. 75); and Motions to Compel Discovery (ECF Nos. 77, 79, and 80).

This matter is ripe for the court's review; no hearing is necessary. *See* D. Md. Local R. 105.6 (2025). For the reasons set forth below, summary judgment will be granted in favor of Officer Baxter and against Mr. Wright.

**BACKGROUND**

The claims against Defendants Sgt. Brett Trahan, Officer Michael Nelson, Officer Jonathan Johnson, and Officer Matthew Wood, were dismissed by Memorandum Opinion and Order issued on February 26, 2025. ECF Nos. 28; 29. This court found that the conspiracy claim raised against these defendants was unsupported by any factual allegations that would raise Mr. Wright's claim above the level of mere speculation. ECF No. 28 at 12-13. Further, the claim against them was raised in their official capacity, and Mr. Wright failed to allege a policy or custom that led to the

excessive use of force against him during his arrest. *Id*. at 12. The sole remaining claim in this case is the excessive force claim against Officer Baxter.

**A. Defendant's Moton for Summary Judgment**

According to Officer Baxter's declaration, he is a police officer employed by the Montgomery County Police Department where he has worked for 21 years. He responded to a call on February 1, 2024, for an "unusual noise heard at a residence" in Chevy Chase, Maryland, indicating a possible break-in. ECF No. 67-4 at 1, ¶¶ 1-4. He drove to the residence in question and was the first officer on the scene. *Id*. at ¶ 5.

When Officer Baxter approached the residence, he observed a man dressed in dark clothes wearing reflective sports shoes, walking through a gate out of the backyard and onto the driveway. ECF No. 67-4 at 2, ¶ 6. The man Officer Baxter observed was later confirmed to be Mr. Wright. *Id*. When Mr. Wright saw Officer Baxter, he turned around and ran back through the gate into the backyard. *Id*. at ¶ 7. According to Officer Baxter, he identified himself as a police officer and instructed Mr. Wright not to jump the fence, but Mr. Wright ignored the command and climbed the fence. *Id*. at ¶ 8. Officer Baxter estimated that the fence was approximately six feet high and recalls that Mr. Wright dropped heavily on the opposite side. *Id*. At that time, Mr. Wright had entered a neighboring yard and dropped a bag containing a laptop computer later determined to have been stolen from the residence where the break-in occurred. *Id*. After Officer Baxter lost sight of Mr. Wright, he heard him climbing at least one more fence. *Id*. Instead of continuing a foot chase, Officer Baxter contacted other officers in the area via radio to let them know the direction in which Mr. Wright was running. *Id*. at ¶ 9. Officer Baxter remained at the scene and spoke with the homeowner who had called for assistance. *Id*.

Officer Baxter states that beyond the commands he gave Mr. Wright to stop fleeing, he did not speak or interact with him during his arrest or processing for the events on February 1, 2024. ECF No. 67-4 at 2, ¶ 10. Officer Baxter adds that he did identify Mr. Wright at the scene of the arrest as the person he saw fleeing the residence but states that he did not interact with him at that time. *Id*. at ¶ 11. He states that he never had any physical contact with Mr. Wright and never threatened to blow his brains out, as alleged by Mr. Wright. *Id*. at ¶ 12. Lastly, Officer Baxter states that he has reviewed the footage from his Body Worn Camera and confirms that it is an accurate portrayal of the events that occurred on February 1, 2024. *Id*. at 3, ¶ 13.

The body worn video footage submitted with Officer Baxter's affidavit follows the narrative he provides. ECF No. 67-4, Exhibit 2, Baxter BWC (filed separately). Significantly, Officer Baxter can be heard introducing himself to the homeowner who made the 911 call reporting that someone had broken into her house. *Id*. at 22:54:19. At approximately the same time, Sgt. Trahan was down the street, apprehending Mr. Wright. *See* ECF No. 67-7, Exhibit 4, Trahan BWC (filed separately) at 22:48:41 - 22:51:00. After Mr. Wright was handcuffed and searched, as captured on Sgt. Trahan's body worn camera, Mr. Wright began complaining about how he had been manhandled by Sgt. Trahan and the officer who assisted Sgt. Trahan. *Id*. at 22:56:04 – 57:58. Meanwhile, Officer Baxter's body worn camera captured his communication with the homeowner, who was visibly shaken by the incident. In an apparent effort to calm her, Officer Baxter told her that Mr. Wright had been arrested. ECF No. 67-4, Exhibit 2, Baxter BWC at 22:57:09 – 57:10. A short time later, Officer Baxter received a call on the radio requesting that he drive down to the scene where Mr. Wright had been apprehended to look at him and verify that he was the man he saw coming out of the homeowner's backyard. *Id*. at 23:02:15 – 02:44. When Officer Baxter

arrived at the scene of the arrest, he confirmed that Mr. Wright was the same man he saw fleeing from the scene of the break-in, but he did not approach Mr. Wright. *Id.* at 23:05:27 – 05:59.

Sgt. Brett Trahan also provided an affidavit denying that he ever threatened to kill Mr. Wright; denying that he "put [his] knee on Mr. Wright's left thigh;" and denying that he kicked Mr. Wright. ECF No. 67-7 at 2, ¶¶ 12, 13, 14. He further confirms that Officer Baxter was not involved in Mr. Wright's arrest. *Id.* at ¶ 15.

The body worn camera ("BWC") footage from Officer Baxter and Sgt. Trahan are police records belonging to the Montgomery County Police Department and are maintained and preserved by the Records Manager and Custodian of Records, Mary Davison. ECF No. 67-9 at 1, ¶ 2. In her affidavit, Ms. Davison states that she reviewed the evidence audits bearing the identifiers: AAF7C35B5EB64E0281F07F0980AC27C8 (BWC Kyle Baxter 2/1/24 22:43:00-23:08:18) and 4BCD0CEDA17B4FD79CB8BE09BD9CDEB8 (BWC Brett Trahan 2/1/24 22:43:22-22:58:15). *Id.* at ¶ 3. She states that the evidence audits demonstrate that the BWC footage from Officer Baxter and Sgt. Trahan were properly uploaded to the system and that neither were altered or modified since the date and time they were originally recorded: February 1, 2024, between 22:43:00 and 23:08:18. *Id.* at 2, ¶ 4, *see also* ECF No. 67-10 (Evidence Audit Baxter); ECF No. 67-11 (Evidence Audit Trahan).

**B. Mr. Wright's Opposition**

Mr. Wright maintains that Officer Baxter "accosted, seized, assaulted, and injured" him when he was arrested. ECF No. 72 at 3. He states that he had submitted to Officer Baxter's physical control and authority for purposes of an arrest. *Id.* He erroneously claims that this court has granted "an amendment to include the multiple officers as defendants" and that they have filed falsified arrest reports to corroborate Officer Baxter's and Sgt. Trahan's disclaimers. *Id.* at 4. He

further maintains that the body-worn video submitted by Defendants proves that he was in Officer Baxter's physical control and authority at the arrest scene. *Id*. Mr. Wright states that he can disprove what defendants claim with a "mediocre attorney." *Id.*

Mr. Wright rejects the body worn camera footage as a "recreation" of the actual events and asserts that it must be excluded from evidence as "simulated and speculative." ECF No. 72 at 9. He takes issue with the fact that no affidavits or body worn camera video footage was submitted by Officers Nelson, Johnson, Miller, and Wood. *Id*. He notes several "flaws" in the videos that, in his view, call into question their authenticity: "firstly, the crime scene and the police pursuit of the alleged unknown suspect is being filed live; secondly, Sgt. Trahan's initial departure and entire drive enroute to the crime-arrest scene is being filed live; thirdly, the voice print heard in Sgt. Trahan's body-worn camera footage narrating the arrest is not Sgt. Trahan." *Id*. at 10. Mr. Wright states he will be requesting a "voice print spectrogram analysis" to compare Sgt. Trahan's and Officer Baxter's voices. *Id*. Mr. Wright additionally disputes that the man being arrested in the video footage is actually him. *Id*.

**C. Mr. Wright's motions regarding discovery**

Mr. Wright filed a Rule 56(d) Motion for Discovery, (ECF No. 70); Motion for a Voice Print Spectrogram Analyst, (ECF No. 71); Motion to Submit Documentary Evidence, (ECF No. 73); Motion to Submit Belated Subpoenas, (ECF No. 75); and three Motions for Orders Compelling Disclosure or Discovery (ECF Nos. 77, 79, 80).

In his Rule 56(d) Motion, Mr. Wright seeks discovery of "the original statement of charges – probable cause application defendants have in its possession and not the 2nd application copy contained in the state's discovery submitted by Jacqueline Edna Taylor, Assistant State's Attorney for the Circuit Court of Montgomery County." ECF No. 70 at 1-2. He claims that the document

is needed so that he can show that Defendants have fabricated evidence to make it seem as though Officer Baxter did not arrest him and cause his injury. *Id*. at 3. He additionally seeks the camera footage from Seven Locks Detention Center depicting his arrival and departure as well as Officer Baxter's arrival and activities there. ECF No. 70-1 at 2. Similarly, in his Motion for a Voice Print Spectrogram, Mr. Wright seeks to establish that the voices heard on the body-worn camera footage narrating the arrest is not Sgt. Trahan and the voice of the arrestee is not Mr. Wright's voice. ECF No. 71 at 3. He states that this would definitively prove that the video is not authentic but is rather a recreated re-filming of the arrest. *Id*.

Federal Rule of Civil Procedure 56(d) provides that:

> If a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts to justify its opposition, the court may:
>
> (1) Defer considering the motion or deny it;
> (2) Allow time to obtain affidavits or declarations or to take discovery; or
> (3) Issue any other appropriate order.

Ordinarily, summary judgment is inappropriate "where the parties have not had an opportunity for reasonable discovery." *E.I. du Pont de Nemours and Co. v. Kolon Industries, Inc.*, 637 F.3d 435, 448-49. However, "the party opposing summary judgment 'cannot complain that summary judgment was granted without discovery unless that party has made an attempt to oppose the motion on the grounds that more time was needed for discovery.'" *Harrods Ltd. v. Sixty Internet Domain Names*, 302 F.3d 214, 244 (4th Cir. 2002) (quoting *Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 961 (4th Cir. 1996)). To raise adequately the issue that discovery is needed, the non-movant typically must file an affidavit or declaration pursuant to Rule 56(d) (formerly Rule 56(f)), explaining why, "for specified reasons, it cannot present facts essential to justify its opposition," without needed discovery. Fed. R. Civ. P. 56(d); *see Harrods*, 302 F.3d at 244-45 (discussing affidavit requirement of former Rule 56(f)).

Notably, "'Rule 56(d) affidavits cannot simply demand discovery for the sake of discovery.'" *Hamilton v. Mayor & City Council of Baltimore*, 807 F. Supp. 2d 331, 342 (D. Md. 2011) (quoting *Young v. UPS*, No. DKC-08-2586, 2011 WL 665321, at *20, 2011 U.S. Dist. LEXIS 14266, at *62 (D. Md. Feb. 14, 2011)). "Rather, to justify a denial of summary judgment on the grounds that additional discovery is necessary, the facts identified in a Rule 56 affidavit must be 'essential to [the] opposition.'" *Scott v. Nuvell Fin. Servs., LLC*, 789 F. Supp. 2d 637, 641 (D. Md. 2011), *rvs'd on other grounds*, (alteration in original) (citation omitted). A non-moving party's Rule 56(d) request for additional discovery is properly denied "where the additional evidence sought for discovery would not have by itself created a genuine issue of material fact sufficient to defeat summary judgment." *Strag v. Bd. of Trs., Craven Cmty. Coll.*, 55 F.3d 943, 954 (4th Cir. 1995); *see Amirmokri v. Abraham*, 437 F. Supp. 2d 414, 420 (D. Md. 2006), *aff'd*, 266 F. App'x. 274 (4th Cir.), *cert. denied*, 555 U.S. 885 (2008).

The statement of charges and statement of probable cause in the criminal case against Mr. Wright resulting from the events of February 1, 2024, is available on the docket of the Circuit Court for Montgomery County in case number C-15-CR-24-000259 and available at http://casesearch.courts.state.md.us/inquiry [https://perma.cc/BE8C-98ZA].[1] It bears the same features Mr. Wright provides to identify the "original charging document" in his Rule 56(d) request, including that it was written by Officer Baxter and approved and signed by a Police Commissioner identified by the initials "D.G." and a badge number of 6620. ECF No. 70 at 2. The statement of probable cause, written by Officer Baxter, is entirely consistent with the documents and videos submitted in this case. The narrative provides in pertinent part that:

[1] Pursuant to Fed. R. Evid. 201(b), "[t]he court may judicially notice a fact that is not subject to reasonable dispute because it . . . can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned."

> When the subject [Mr. Wright] saw the writer [Officer Baxter], he immediately turned around and ran. The subject was carrying a black bag which he dropped as he ran through the yard. The subject was wearing dark clothing with shoes that had reflective markings on them. The subject climbed a 6 foot fence into the yard of 4521 Dorset Ave and fell hard to the ground. The subject then got up and kept running through the neighboring yards. The writer lost sight of the subject but heard him climbing a chain linked fence. The writer entered the yard of 4523 Dorset Ave and saw that house with a chain link fence went towards Cumberland Ave, the street directly north of Dorset Ave.
>
> Sgt. Trahan #1310 was on Cumberland Ave and saw the subject run across the street near the intersection of Cumberland Ave and Deal Place due to the reflective markings on his shoes. Sgt. Trahan exited his police cruiser at the intersection and located the subject attempting to hide in a small wooded area just off the street. Sgt. Trahan gave the subject commands and he was taken into custody with the assistance of Officer Nelson #2354.
>
> Sgt. Trahan was able to identify the subject as Walter Lee Wright with the DOB 03-18-1956 by his Maryland Division of Corrections ID card and birth certificate from the State of Florida.
>
> Once the subject was taken into custody; the writer returned to the original callers' home ....

*State of Maryland v. Wright*, Case No. C-15-CR-24-000259 (Mont. Co. Cir. Ct.) (March 4, 2024 Statement of Charges). Under Fed. R. of Civ. P. 34(a)(1) a party may request the production of any specified documents which are "in the responding party's possession, custody, or control." The statement of charges Mr. Wright seeks is not a document that is in Officer Baxter's possession, custody, or control and is therefore not an appropriate subject for a discovery request. Moreover, it does not establish a genuine dispute of material fact.

Mr. Wright's second request, a copy of the video footage depicting his arrival and departure at Seven Locks Detention Center and Officer Baxter's activities there, must also be denied. Mr. Wright offers no rationale for this request. *See* ECF No. 70-1 at 2. "Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence" Fed. R. Civ. P. 26(b)(1); however, Mr. Wright's request for video footage

of his arrival and departure at the detention center has no discernible relevance to his claim that Officer Baxter used excessive force against him during his arrest.

The motion for a voice spectrogram analysis of the body worn camera footage for purposes of establishing that nobody in the video is who they appear to be and that both videos have been staged, harkens back to Mr. Wright's claim of a conspiracy among the parties he originally named in this action which was dismissed by this court. ECF No. 71. Specifically, this court observed that Mr. Wright "claims there has been a widespread conspiracy to protect Officer Baxter by altering the body-worn video footage but offers no factual allegation that would raise such a claim above speculation. The conspiracy claim must therefore be dismissed." ECF No. 28 at 12-13. Mr. Wright may not now resurrect a baseless conspiracy claim to support his theory that it was in fact Officer Baxter who physically placed him under arrest and not Sgt. Trahan as depicted in the body worn video exhibits submitted by defendant. This motion is also denied.

Mr. Wright's Motion to Submit Documentary Evidence seeks to submit exhibits in support of his opposition response. ECF No. 73. The motion shall be granted. The exhibits are considered as part of his opposition.

Mr. Wright's Motion to Submit Belated Subpoenas is linked to his Rule 56(d) motion. ECF No. 75. One subpoena is directed to the Warden of Seven Locks Detention Center for the video of his arrival on February 1, 2024, and his departure (ECF No. 75-2) and the second subpoena is directed to the Montgomery County Fire and Rescue EMS Agency Chief Daniel Blankfeld for the audio exchange between the EMD dispatcher and Officer Baxter (ECF No. 75-3). Because Mr. Wright's Rule 56(d) motion is without merit, this motion shall also be denied.

In his Motions to Compel Discovery, Mr. Wright argues that this court should issue orders compelling compliance with his demands for discovery as stated in his previously filed motions

and his subpoenas. ECF Nos. 77, 79, 80. A motion to compel discovery is improperly filed if there is no evidence that (1) discovery has commenced; (2) an appropriate discovery request was made; (3) a response to the request was either not provided or did not comply with the request; and (4) informal efforts to resolve the dispute have failed. *See* Fed. R. Civ. Proc. 26, *see also* Local Rule 104.8 (D. Md. 2025) (governing procedure for motions to compel). Here, discovery has not commenced,[2] and this court has found no basis for Mr. Wright's Rule 56(d) motion. Accordingly, his motions to compel discovery will be denied.

## STANDARD OF REVIEW

Officer Baxter's dispositive motion is filed as a motion for summary judgment. Pursuant to Fed. R. Civ. P. 56(a), "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The Supreme Court has clarified that this does not mean that any factual dispute will defeat the motion: "By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc*., 477 U. S. 242, 247-48 (1986) (emphasis in original).

In addition, "[a] party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat v. Baltimore Ravens Football Club, Inc*., 346 F.3d 514, 522 (4th Cir. 2003) (alteration in original) (quoting Fed. R. Civ. P. 56(e)). The court should "view the evidence in the light most favorable to . . . the nonmovant, and draw all

[2] *See* Local Rule 104.4 (D. Md. 2025) ("discovery shall not commence and disclosures need not be made until a scheduling order is entered.").

inferences in her favor without weighing the evidence or assessing the witness' credibility." *Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 645 (4th Cir. 2002). The court must, however, also abide by the "affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial." *Bouchat*, 346 F.3d at 526 (internal quotation marks omitted) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993), and citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986)).

## DISCUSSION

Claims of excessive force during an arrest or investigatory stop are examined under the Fourth Amendment's objective reasonableness standard. *Graham v. Connor*, 490 U.S. 386, 395-97 (1989); *see also Cty. of Los Angeles v. Mendez*, 581 U.S. 420, 427 (2017) ("*The* framework for analyzing excessive force claims is set out in *Graham*."). Reasonableness is assessed by weighing "the nature and quality of the intrusion on the individual's Fourth Amendment interests against the importance of the governmental interests alleged to justify the intrusion." *Mendez*, 581 U.S. at 427 (quoting *Tennessee v. Garner*, 471 U.S. 1, 8 (1985)). The operative question is "whether the totality of the circumstances justifies a particular sort of search or seizure." *Id.* at 427-28 (quoting *Garner*, 471 U.S. at 8-9). Factors to be included in making this determination include the severity of the crime at issue, whether there is an immediate threat to the safety of the officer or others, and whether the subject is resisting arrest or attempting to flee. *See Graham*, 490 U.S. at 396. The determination is to be made "'from the perspective of a reasonable officer on the scene' . . . 'based upon the information the officers had when the conduct occurred.'" *Mendez*, 581 U.S. at 428 (first quoting *Graham*, 490 U.S. at 397; then quoting *Saucier v. Katz*, 533 U.S. 194, 207 (2001)). The Constitution "does not require police to gamble with their lives in the face of a serious threat of harm." *Waterman v. Batton*, 393 F.3d 471, 479 (4th Cir. 2005) (quoting *Elliott v. Leavitt*, 99 F.3d 640, 641 (4th Cir. 1996)). Further, "'the right to make an arrest' 'necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it.'" *E.W. ex rel. T.W. v.*

*Dolgos*, 884 F.3d 172, 192 (4th Cir. 2018) (quoting *Graham*, 490 U.S. at 396; *see also Martin v. Gentile*, 849 F.2d 863, 869 (4th Cir. 1988).

Mr. Wright's claim against Officer Baxter has been refuted by video evidence that establishes that it was Sgt. Trahan, not Officer Baxter, who arrested Mr. Wright at the scene. When Mr. Wright previously disputed the validity of the video footage submitted with Defendants' Motion to Dismiss, he claimed there was additional video footage that was missing.[3] Such is not the case now. Mr. Wright's contention that nothing about the videos is real is based on his speculation, conjecture, and belief. "The nonmoving party 'cannot create a genuine issue of material fact through mere speculation or the building of one inference upon another.'" *Clear Channel Outdoor, Inc. v. Mayor & City Council of Baltimore*, 153 F. Supp. 3d 865, 869 (D. Md. 2015) (quoting *Beale v. Hardy*, 769 F.2d 213, 214 (4th Cir.1985)). "[T]he mere existence of some alleged factual dispute between the parties will not defeat a properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson*, 477 U.S. at 247-48. A genuine issue concerning a material fact exists when the evidence is sufficient to allow a reasonable jury to return a verdict in the nonmoving party's favor. *Id.* at 248. A reasonable jury would not return a verdict in Mr. Wright's favor on the grounds he has advanced regarding the substitution of voices within the body worn camera videos, his insistence that the videos are fake and have been recreated, and that there has been a nefarious scheme put into place to convince all involved that Officer Baxter was not the officer who placed him under arrest. As such, Officer Baxter is entitled to summary judgment in his favor.

---

[3] Mr. Wright referenced in opposing Defendants' Motion to Dismiss different body worn camera video footage that had been shown to him by his public defender but had not been provided within the context of this case. *See* ECF No. 4 at 8; ECF No. 24 at 8.

Moreover, Mr. Wright has known from the time of his criminal trial that Montgomery County Police contend that Sgt. Trahan was the officer who physically placed him under arrest. Despite that having that information, Mr. Wright has not sought to sue Sgt. Trahan for excessive force, instead focusing on Officer Baxter's alleged wrongdoing. The only claim asserted against Sgt. Trahan, for conspiring to cover up his arrest circumstances, has been dismissed. It is not necessary, then, to assess whether the body cam video and other record evidence preclude a claim that has not been asserted.

Accordingly, by separate Order which follows, the motion for summary judgment will be granted and this case will be closed.

November 17, 2026
Date

/s/
DEBORAH K. CHASANOW
United States District Judge